UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH METREJEAN                              CIVIL ACTION

VERSUS                                        NO: 08-5049

REC MARINE LOGISTICS, L.L.C.,                 SECTION: R(4)
AND HELIS OIL & GAS COMPANY,
L.L.C.

## **ORDER AND REASONS**

Before the Court is REC Marine Logistics, L.L.C.'s and Helis Oil & Gas Company, L.L.C.'s Motion in Limine to Exclude the Testimony of Edward B. Robert, Jr. and Carla D. Seyler. For the following reasons, defendants' motion is DENIED.

### I.   BACKGROUND

On or about May 8, 2008, Joseph Metrejean sustained a back injury when he slipped and fell on a barge during the course of his employment. At the time of his injury, Metrejean was an employee of REC Marine, which operated the tugboat that was towing the barge that was operated by Helis. Metrejean brought this complaint under the Jones Act alleging that he was injured as a result of Rec Marine's and Helis's negligence.

In support of his claims, Metrejean has retained two expert witnesses, Edward B. Robert, Jr. and Carla D. Seyler. Robert would testify as to the safety of conditions on the barge at the time Metrejean was injured. Seyler would testify as to Metrejean's lost wages and advancement possibilities.

## II. LEGAL STANDARD

A district court has considerable discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. V. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its

reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence; in other words, whether it is relevant. *See id.* at 591.

In addition to requiring relevant and reliable opinions, Rule 702 also requires that an expert be properly qualified. In assessing an expert's qualifications, the Court's gatekeeping function does not replace the traditional adversary system and the role of the jury within the system. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that, qualifications become an issue for the trier of fact, rather than for the court in its gate-keeping capacity." *Rushing v. Kansas*

*City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999); *see also United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Mississippi*, 80 F.3d 1074, 1077 (5th Cir. 1996). A witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications; "a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Wright v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991).

Lastly, although parties typically seek to exclude expert testimony on the basis that it is unreliable, *see, e.g.*, *Kumho Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 587, the Court must also determine whether expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591. To this end, courts generally do not permit experts to testify as to matters of domestic law in order to avoid confusing the jury with multifarious pronouncements on the law. *See Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991); *see also* Fed. R. Evid. 702; *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact" in understanding evidence or determining facts in issue). The notes accompanying Rule 704 explain that the rule does not permit "opinions which would merely tell the jury what result to reach"

4

or which are "phrased in terms of inadequately explored legal criteria." Fed. R. Evid. 704 advisory committee's notes. On the other hand, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). In sum, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart*, 112 F.3d at 1212-13.

**III. DISCUSSION**

A.  **Edward B. Robert, Jr.**

Defendants claim that Robert is not sufficiently qualified to present expert testimony as to safety conditions and safety measures on tugboats and barges. Defendants also claim that the basis for Robert's testimony is unreliable. The Court rejects these arguments.

Robert received a bachelor of science degree in petroleum geology from Louisiana State University in 1956. (R. Doc. 26-2.) He is a member of the American Society of Safety Engineers, the Delta Safety Society, and the International Association of Drilling Contractors, Insurance Committee and Safety Committee. (*Id.*) Robert has taught courses and seminars relating to oilfield operations, equipment and safety at the University of

New Orleans.  (*Id.*)  He was the Safety and Training Director at The Mayronne Company, an offshore drilling contractor, for thirteen years.  (*Id.*)  In this capacity he conducted oil rig inspections; supervised accident investigations; was responsible for a fleet of work boats and crew boats and three marine terminals; and promulgated safety policies and procedures for rig and vessel operations in compliance with Coast Guard, EPA and OSHA regulations.  (R. Doc. 26-4.)  Robert has attended a number of safety programs relating to offshore drilling.  (R. Doc. 26-2.)

Defendants assert that regardless of whether Robert may be qualified to testify as to safety on offshore oil platforms, he is not qualified to testify as to safety on moving tugboats and barges.  Defendants assert that Robert has no experience with deck hands such as Metrejean.  The Court finds that Robert is sufficiently qualified to testify as to the safety hazards and safety measures at issue in this case.  It is true that safety measures on oil rigs may differ from those on tugboats and barges.  But this difference does not warrant excluding Robert's testimony in this case.  Metrejean alleges that he slipped and fell because of oil on the deck of the barge.  Robert will testify that this oil spillage occurred in substantial part because the storage tanks did not have appropriate covers or baffles.  Robert is well qualified to testify as to safety risks

6

arising from the storage and transportation of oil, as well as available measures to mitigate these risks.[1]  To the extent defendants believe that Robert's testimony is inapplicable in the context of moving tugboats and barges, they may cross examine him at trial.

Defendants also object to Robert's testimony because his initial opinion assumed that Metrejean was injured while the tugboat was moored to a platform, when in fact Metrejean later testified at his deposition that he was injured while the tugboat was in route from the platform to port.  In his initial opinion, Robert acknowledged that discovery was on-going and that he may need to revise it in light of subsequent depositions.  (R. Doc. 26-4.)  Following his review of Metrejean's deposition testimony, Robert wrote a second opinion reaffirming the conclusions of his first.  (R. Doc. 26-5.)  The Court finds that Robert's reliance on Metrejean's deposition testimony, answers to interrogatories, and initial disclosures, as well as the report of Seyler Favaloro, are sufficiently reliable bases for his opinion as to the conditions on the barge at the time Metrejean slipped and fell.  The Court also finds that Robert has reliably applied his experience to those facts by suggesting concrete ways that risks

---

[1] Although Robert will be permitted to testify as to safety conditions on the tugboat, he will not be permitted to draw conclusions as to defendants' legal "liability." *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusion of law").

could have been mitigated. To the extent defendants believe that Robert's assumptions or suggestions are inapplicable in the context of a moving tugboat or barge, those are disputed issues of fact that may be addressed on cross examination.

B.   **Carla D. Seyler**

Defendants also seek to exclude the testimony of Carla D. Seyler.[2] Defendants claim that Seyler's testimony is unreliable and based on "fundamentally flawed" assumptions because she asserts that Metrejean's injury would prevent him from becoming a tugboat captain in inland waterways. (R. Doc. 23 at 7.) Defendants assert that Metrejean's past work history indicates that he was unlikely to become a tugboat captain.

Defendants' objection to Seyler's testimony is groundless. Seyler does not make an unfounded prediction that Metrejean would have become a tugboat captain. She states instead that Metrejean expressed an interest in becoming a captain, and that this opportunity is no longer available to him. The jury may make its own assessment as to the probability and value of this loss. Moreover, Seyler's report addresses jobs that Metrejean has performed in the past, as well as examples of typical jobs that he would be able to perform in the future based on data from the

---

[2] Defendants do not object to Seyler's qualifications, and after reviewing the record, the Court finds that she is well qualified to testify as to Metrejean's lost wages and advancement possibilities. (See R. Doc. 26-3.)

8

Louisiana Workforce Commission for St. Mary Parish. (See R. Doc. 26-6 at 4-5.) These are reliable bases for her conclusions, and her analysis properly takes them into account.

## IV. CONCLUSION

For the reasons stated, defendants' motion in limine to exclude the testimony of Edward B. Robert, Jr. and Carla D. Seyler is DENIED.

New Orleans, Louisiana, this 21st day of September, 2009

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE